[No. 21253. Department One. August 30, 1928.]

J. I. FARRIER et al., Appellants, v. GUS FRANSON et al., Respondents.[1]

[1] WATERS AND WATER COURSES (44)—NATURAL WATER COURSES—DIVERSION—ACTIONS—DAMAGES — EVIDENCE — RELIEF. A decree dismissing plaintiff's action for an injunction against diverting the waters of a stream, and compelling the plaintiff to tear out a concrete dam, slightly raising the waters to secure irrigation of a tract of land, will be reversed as too severe, where it appears that the dam has not diverted the waters of the stream to the injury of the defendants to any appreciable extent; and that, if it is a contributory cause to a slight raising of the waters, all injury can be avoided by a less expensive slight raising of the banks of the stream.

Appeal from a judgment of the superior court for Lincoln county, Sessions, J., entered December 13, 1927, dismissing on the merits an action for an injunction and for damages for diverting the waters of a stream, after a trial to the court. Reversed.

*Miller & Freese* and *Fred J. Cunningham,* for appellants.

*Pettijohn & McCallum,* for respondents.

TOLMAN, J.—Appellants, as plaintiffs, brought this action alleging that they are the owners of certain

[1]Reported in 270 Pac. 99.

lands riparian to Crab Creek; that, under a permit from the state, they have constructed a concrete dam in the creek, some three hundred feet below where it enters their lands, by means of which they are diverting water through a ditch to irrigate some ninety acres of their lands which they have prepared, leveled and seeded at great expense; that the defendants, who are adjoining upstream land owners, have opened the bank of the stream on their own land above the plaintiffs' dam and are conducting water from the stream, which would otherwise flow into plaintiffs' irrigation ditch, through such opening and a natural swale and by means of a ditch dug by them for that purpose across their own land, and discharging it into the plaintiffs' land at a place where it causes damage and is not returned to the stream except at a point below the dam where its beneficial use is entirely lost to the plaintiffs. The prayer is for an injunction and for damages.

The answer denies any wrongful acts on the part of the defendants, and alleges that plaintiffs' dam has caused the water in the stream to be raised and held back upon the lands of the defendants to such an extent as to cause the bank to break and the waters escape from the stream upon the lands of the defendants; and that the only act of the defendants was to collect such overflow waters thus cast upon their lands into a ditch which followed a natural swale, whence it was discharged by gravity flow upon plaintiffs' land. And they, in turn, pray for a judgment for damages, and that the plaintiffs be enjoined from damming and obstructing the natural flow of the stream.

After a trial on the merits, the trial court entered its decree dismissing plaintiffs' action with prejudice, directing the plaintiffs to remove their dam, and restraining them from placing any dam or structure in

the stream which will narrow the channel or in any manner obstruct the natural flow or cause the waters to back up upon the lands of the defendants. From this judgment, the plaintiffs appeal.

Crab Creek may hardly be termed "the father of waters," but it seems to be the mother of litigation. It is apparently agreed that the creek has three stages: High water, when the stream covers the valley from bluff to bluff and the water cannot be controlled by any artificial means, during which period the dam here in question is wholly without effect upon the situation. This stage usually lasts but a few days. Then follows the intermediate stage, which may last a month or two, during which time the stream runs more or less bank-full but does not overflow. The remainder of the year is the low water stage, during which there is no danger of the happening of any of the things which are here complained of by either side; and during a considerable part of the low water stage, all of the water which can be beneficially used is eagerly sought.

[1] We see here a question of fact, only; and from the abstract, we have gone to the statement of facts in an attempt to fully understand the situation. From our reading of the record, the engineering data is incomplete and insufficient to permit us to clearly and satisfactorily reach a full and final understanding of all the possibilities. But we are convinced that the appellants have failed to maintain the burden of proof, which is on them, to establish that respondents have opened the bank of the stream and caused the water to leave the channel above the dam.

On respondents' land, was what might be called a horseshoe bend in the stream. Some years ago, the respondents, conceiving that to be for their benefit, ditched across, cut out this bend and straightened the channel; since which time, in the low water stage, the

stream has been entirely confined to the new channel, but in the intermediate stage it has apparently flowed in both the old and the new channel. The banks seem to be somewhat lower at this particular point in the old channel, and we are satisfied that the weight of the evidence is to the effect that the banks were here overflowed and thus broken through during the high water stage of the year 1927, and that respondents have done nothing but what they properly might to protect their lands from the overflow. If, however, by their ditch they have caused water to flow to appellants' lands which would otherwise have remained on their own property, the record will warrant a judgment only for nominal damages.

The bank which here gave way, low though it was, was substantially higher than the spillway of appellants' dam, and apparently the break occurred before the irrigation season when no splash boards were being used, and under conditions where the height of the plaintiffs' dam could not have caused the damage.

The dam is a concrete structure which raises the bed of the stream only one foot, unless splash boards are inserted; and the testimony seems to establish that one eight-inch splash board is ample to divert what water appellants require to irrigate their lands and is all that they use. Without the splash board, or even with one eight-inch splash board, the water is not raised to the level at which it enters appellants' property from respondents' land. This raising, slight though it be, may have caused the deposit of some silt immediately above the dam, but we are satisfied that the raising alone has not in any manner affected the water on respondents' property, and could not have caused the bank to break.

The dam narrows the stream somewhat; but with the added capacity given by the irrigation ditch, we are

22—148 WASH.

satisfied that it offers no impediment to the flow of the stream, more than has for years existed from two bridges built over the stream above it, one on appellants' property and one on the respondents'. Both of these bridges have existed for years without complaint from anyone, and appellants' bridge is shown to have existed long enough to establish a prescriptive right. It seems entirely probable that there has been some filling in of the channel of the stream on respondents' property, but we are satisfied that the construction of the dam is not shown to be the proximate cause; and from the whole record it would appear more than probable that such filling was the natural result of the high water for which no one is responsible; but if, during the high water stage, the dam contributed at all, it was in a very minor degree not susceptible of being established by satisfactory proof.

At any rate, on the mere possibility that the dam might have been a slight contributing cause to the filling of the bed of the stream on respondents' land, the remedy imposed by the trial court of tearing out an expensive concrete structure, and perhaps the loss of the beneficial use of the water and of the production of ninety acres of irrigable land, is altogether too severe. It would seem that neighbors who want only to protect themselves could agree on a much less expensive remedy, and though the cost is not shown, apparently an inexpensive raising and strengthening of the bank of the stream where needed would be all that is required for the protection of both parties and the resumption of neighborly relations.

We conclude that neither party has made a case which warrants recovery against the other in this action, and that the action should be dismissed, but without prejudice to the right of appellants to seek by condemnation the right to go upon the lands of the re-

spondents for the purpose of raising, strengthening and maintaining the banks of the stream.

The judgment appealed from is reversed, with direction to enter judgment in harmony with what has been said.

FULLERTON, C. J., PARKER, MITCHELL, and FRENCH, JJ., concur.